J-S29018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LUCAS NICHOLAS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROLAND KITTRELL | |
| Appellant | No. 1617 MDA 2013 |

Appeal from the Order Entered on August 13, 2013
In the Court of Common Pleas of Centre County
Civil Division at No.: 2010-1532

BEFORE: PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED AUGUST 22, 2014**

Roland Kittrell, *pro se*, appeals the August 13, 2013 order of the Court

of Common Pleas of Centre County, which denied Kittrell's post-trial

motions.[1]  For the reason set forth below, we affirm.

_____

[*]     Retired Senior Judge assigned to the Superior Court.

[1]     Generally, an appeal will not lie from a trial court's denial of post-trial
motions when the underlying verdict has not been reduced to judgment.
***See Johnston the Florist, Inc., v. TEDCO Constr. Corp.***, 657 A.2d 511,
515 (Pa. Super. 1995) (*en banc*).  Our review indicates that judgment had
not been entered as of the transmission of the certified record to this Court.
However, our Supreme Court and this Court, on occasion, have overlooked
the omission to seek the entry of judgment and taken cognizance of appeals
based upon the principle that we may "regard as done that which ought to
have been done" when the interests of justice and expediency would best be
served.  ***McCormick v. N'eastern Bank of Penna.***, 561 A.2d 328, 330 n.1
(Pa. 1989); ***see Hawkey v. Peirsel***, 869 A.2d 983, 985-86
(Pa. Super. 2005) ("[W]e may review an appeal in the absence of a properly
entered judgment where the order from which a party appeals was clearly
*(Footnote Continued Next Page)*

This case arises from an altercation at the State Correctional Institution at Rockville between Kittrell, a prisoner, and Lucas Nicholas, a corrections officer at the same facility. Notes of Testimony ("N.T."), 3/12/2013, at 3-7. While the identity of the antagonist in the underlying events was contested at trial, the evidence demonstrated that, after a verbal altercation, Kittrell punched Nicholas twice in the head immediately after Nicholas locked a door separating the housing units and a common area of the prison. *Id.* at 10-11. Two other correctional officers, Rodney Kaufman and Timothy Watson, subdued Kittrell by tackling him to the ground as Nicholas crawled out of harm's way. *Id.* at 43-45. Nicholas suffered several broken bones in his face and a broken nose, as well as a laceration in his ear and internal bleeding behind his nose that was stanched only after hours of medical care. *Id.* at 13. The other officers also sustained various injuries.

---
*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

intended to be a final pronouncement on the matters discussed."); *accord Croydon Plastics Co., Inc. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 628-29 (Pa. Super. 1997) (quoting *Johnston the Florist*, 657 A.2d at 514) ("Were we to quash an appeal from an order which, except for entry of judgment, is otherwise final, we would expend judicial resources in the decision to quash, one of the parties would inevitably praecipe the prothonotary to enter judgment, and a subsequent appeal would be permitted to follow."); *Randt v. Abex Corp.*, 671 A.2d 228, 228 n.2 (Pa. Super. 1996). We believe that this case warrants similar treatment. Accordingly, notwithstanding this procedural infirmity in the trial court, we will address the merits of Kittrell's appeal.

Kittrell sustained a broken nose and required stiches in and around his mouth. *Id.* at 27.[2]

Nicholas filed an amended complaint on July 19, 2010, alleging one count of assault, one count of battery, and seeking $50,000 in compensatory and punitive damages on each count. Complaint, 7/19/2010, at 4-7. On September 15, 2010, Kittrell filed his answer and counterclaims, which alleged assault, battery, and excessive force by law enforcement, among other things. After a litany of procedural motions, including Kittrell's several requests for counsel, and a dispute over whether Nicholas was served with Kittrell's answer, the case proceeded to trial on March 12, 2013. Following a one-day bench trial, the court awarded Nicholas $25,000 in damages:

> The [c]ourt has heard testimony and evidence and has to resolve a dispute as to whether the fight was initiated by Mr. Kittrell or by Mr. Nicholas. The [c]ourt determines that he who essentially would have started that fight would be in a position not to recover, because they would have put into place the conflict that resulted in the injuries. The [c]ourt finds that both the defendant and the plaintiff were both [*sic*] injured. The question becomes, how did this commence? There is eyewitness testimony from Mr. Kauffman that substantiates Mr. Nicholas' account. Mr. Kittrell's account is not substantiated, and it is also not detailed. It's conclusionary without any fill-in details to assist the [c]ourt. As such, the [c]ourt is going to find for [p]laintiff Lucas Nicholas in his claim against [Kittrell] in the

---

[2]    A more detailed account of the factual background was furnished by this Court in an earlier memorandum addressing Kittrell's appeal of his judgment of sentence entered upon his conviction of crimes charged in connection with the events underlying the instant civil suit. *See* ***Commonwealth v. Kittrell***, 765 MDA 2011, slip op. at 1-2 (Pa. Super. 2011) (unpublished memorandum).

amount of $25,000, and the [c]ourt will dismiss the counterclaim[s] of Roland Kittrell against [Nicholas].

N.T., 3/12/2013, at 72-73.

The verdict ultimately was entered in the docket on March 20, 2013, and Kittrell filed a notice of appeal on March 27, 2013. Following procedural steps in accord with Pa.R.A.P. 1925, on May 31, 2013, this court dismissed Kittrell's appeal without prejudice for failure to file post-trial motions. Therein, this Court noted that Kittrell was free on remand to seek leave from the trial court to file post-trial motions *nunc pro tunc*. Superior Court Order, 5/14/2013.

On July 10, 2013, Kittrell filed a motion for post-trial relief *nunc pro tunc*, in which he raised issues too numerous and disorganized to review in detail. Kittrell argued, *inter alia*, that the trial court should have entered default judgment against Nicholas, that the verdict was contrary to the weight of the evidence, and that Kittrell was not competent to stand trial. Motion for Post-Trial Relief *Nunc pro Tunc*, 7/10/2013, at 1-5.

On August 13, 2013, the trial court issued an opinion and order denying Kittrell's motion. The trial court partially relied upon an opinion issued on January 12, 2012, in which it explained its decision to grant Nicholas' petition to open a previously entered default judgment in Kittrell's favor. Trial Court Opinion, 1/12/2012 ("T.C.O."), at 1. The trial court also responded to Kittrell's assertion that the verdict was against the weight of the evidence by citing the above-quoted language from the March 12, 2013

notes of testimony, in which the court explained why it rejected Kittrell's version of events.  *Id.* at 2-3.  With regard to Kittrell's remaining claims, the trial court explained as follows:

> [Kittrell] now would like to argue:  he was not mentally competent to stand trial; the psychiatrist treating [Kittrell] is employed by the Department of Correction[s] and thus has a conflict of interest [relative] to the case at hand; the Commonwealth withheld and destroyed evidence relevant to the case; that because [Nicholas'] counsel at trial, Attorney Richardson Eagen, did not file an Entry of Appearance, he should not have been allowed to represent [Nicholas] at the non-jury trial; and that the testimony of Correctional Officer Rodney Kauffman "should have been impeached . . . as a matter of law." These claims made by [Kittrell] are either not supported by any law that the [c]ourt is aware of, or were not raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial, nor is it specified in [Kittrell's] [m]otion how the grounds were asserted in pre-trial proceedings or at trial.  *See* Pa.R.C.P. 227.1(b).

*Id.* at 3-4 (citation modified; ellipsis in original).

On August 30, 2013, Kittrell filed a second notice of appeal, imperfectly invoking our jurisdiction.  *See supra* at 1 n.1.  On September 10, 2013, the trial court ordered Kittrell to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and, on October 2, 2013, Kittrell filed his second Rule 1925(b) statement.  On October 29, 2013, the trial court issued its responsive Rule 1925(a) opinion.

Kittrell raises the following issues for our review, which we reproduce with minor grammatical corrections and clarifications for ease of reference:

> I.     Did the trial court err by forcing Kittrell to proceed without counsel despite his mental impairment, which substantially

- 5 -

limited his comprehensive and social skills, and which was recorded before the court?

II.   Did the trial court commit constitutional error by depriving Kittrell of an oral or written notification to file a post-trial motion within 10 days pursuant to Pa.R.C.P. 227.1(b) and article 539 Pa. Const?[3]

III.   Did the trial court err by denying Kittrell's post-trial motion *nunc pro tunc* by questioning Kittrell's failure to assert an explanation why he failed to file a timely post-trial motions?

IV.   Did the trial court err by dismissing Kittrell's counterclaim in which Kittrell asserted that he was sexually assaulted by the plaintiff and assaulted for reporting staff abuse?

V.   Did the trial court err by not granting defendant a new trial when the verdict was contrary to the evidence?

VI.   Did the trial court err in permitting testimony of correctional officer Kauffman even after having knowledge of Kauffman's perjured statement in prior criminal matter captioned **Com. v. Kittrell** at. No. Cp-14-CR-1435-2010?

VII.   Did the trial court err by not awarding Kittrell a new trial because the verdict was contrary to the weight of the evidence?

VIII.   Did the trial court err when Kittrell's counterclaim was heard without a jury despite his explicit demand in writing for a jury trial?

IX.   Did the trial court abuse its discretion when a court order was issued on July 16, 2012, relating to an assessment from plaintiff's Pennsylvania Department of Corrections psychologist or psychiatrist, regarding Kittrell's ability to proceed to trial, where a conflict of interest existed and qualifications were requested to determine the value of their diagnosis?

---

[3]   The Pennsylvania Constitution contains no article 539. It is unclear what authority Kittrell sought to invoke with this reference.

> X.   Did the trial court err by not granting a new trial based on newly discovered evidence that was not available at the time of trial?
>
> XI.  Did the trial court err by allowing plaintiff's trial counsel Richardson Todd Eagen to represent plaintiff when Eagen isn't counsel of record because Eagen never filed a praecipe of appearance?

Kittrell's Brief at 4-5.[4]

In his first issue, Kittrell claims that he was entitled to, and hence improperly denied, appointed counsel. Throughout this litigation, Kittrell repeatedly has asked the trial court for appointed counsel. He has cited several potentially valid ways in which he suffered prejudice as a consequence of his *pro se* status. **See, e.g.**, Motions for Appointment of Trial Counsel, 11/12/2010, 3/31/2011, 11/17/2011, 1/21/2013; Petitions for Appointment of Appellate Counsel, 3/27/2013, 4/16/2013, 4/19/2013. Kittrell avers that he cannot afford counsel; that, as a prisoner, he does not have the legal resources available to argue his case; that he has been

_____

[4]   Kittrell has filed a petition for relief in the form of a letter to our Prothonotary asking this Court to transfer this case to the Commonwealth Court for disposition, based upon the questionable assertion that this is a "state tort claim and not a civil rights violation." Letter, 3/24/2014, at 1. Setting aside the question of whether this appeal more properly lies in the Commonwealth Court's jurisdiction under 42 Pa.C.S. § 762, we long have held that 42 Pa.C.S. § 704 furnishes an exception, entitling this Court to decide appeals in the Commonwealth Court's jurisdiction when the appellee does not object to this Court's jurisdiction and we determine that retaining jurisdiction serves judicial economy. **See Lara, Inc., v. Dorney Park Coaster Co., Inc.**, 534 A.2d 1062, 1065-66 (Pa. Super. 1987). We find that it will serve judicial economy to retain and decide this case. Consequently, Kittrell's petition for relief hereby is denied.

diagnosed with bipolar/schizophrenia disorder; that the legal issues are complex and require significant research and investigation; and that the issues at trial were likely to turn on credibility determinations, among numerous other concerns that prevented him from adequately defending the case.

In support of his argument, Kittrell cites only a Third Circuit case describing the situations in which that court will appoint counsel for defendants in federal civil cases. *See Parham v. Johnson*, 126 F.3d 454 (3d Cir. 1997). Kittrell properly describes the factors employed by that court in deciding whether to appoint counsel,[5] and makes a compelling argument as to why he would qualify under those factors. *See* Kittrell's Brief at 9. The various procedural errors detailed below illustrate precisely why the representation of counsel can be so important to a litigant. However, *Parham* relied upon a federal statute that provides federal courts the discretion to appoint counsel in federal cases. *See* 28 U.S.C. §1915(e).

_____

[5] These factors are (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such an investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *Parham*, 126 F.3d at 457-58 (quoting *Tabron v. Grace*, 6 F.3d 147, 155-56 (3d Cir. 1993)). Notably, these factors and *Parham*, itself, appear directed solely to a **plaintiff's** entitlement to appointed counsel. Other factors might come into play when a **defendant** seeks appointed counsel, especially when that defendant is an indigent inmate with very limited legal and investigative resources.

Pennsylvania has no equivalent statute vesting discretion in Pennsylvania courts to appoint counsel for indigent civil litigants. However, our Supreme Court has indicated that counsel may be appointed at least under extreme circumstances that implicate the Fourteenth Amendment to the United States Constitution. *See Commonwealth v. $9847.00 U.S. Currency*, 704 A.2d 612, 615 (Pa. 1997). Therein, the Court explained the narrow circumstances under which appointment of counsel might be appropriate, and articulated the standard that courts should employ in making such a determination:

> [I]n certain limited situations, the Due Process Clause of the Fourteenth Amendment to the United States Constitution may require court[-]appointed counsel in civil matters. In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the United States Supreme Court set forth three factors which must be weighed to determine whether there is a right to court-appointed counsel in a civil matter: (1) the private interest at stake; (2) the government interest at stake; and (3) the likelihood of an erroneous decision. *Id.* at 335. There is a presumption, however, that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 26 (1981) (no *per se* right to court-appointed counsel in proceeding to terminate parental rights). Taken together, these cases require that the outcome of the examination of the three facts enunciated in *Mathews*, be weighed against the *Lassiter* presumption that an indigent is only entitled to appointed counsel when his physical liberty is at stake. *Lassiter*, 452 U.S. at 27.

*$9,847*, 704 A.2d at 615 (citations modified).

It seems likely that Kittrell's claim would fail when measured by Pennsylvania's standard. The nature of the evidence, and the trial court's

decision to credit the correctional officers' testimony over Kittrell's (a determination echoed by the fact-finder in Kittrell's criminal proceedings, **see** supra at 3 n.2) suggest that the representation of counsel was unlikely to reduce the likelihood of an erroneous decision in this relatively straightforward case. And while Kittrell's private interest in avoiding a substantial debt is not insignificant, it is ameliorated in the practical sense by his indigence and the lengthy sentence that he presently is serving, which includes the twenty-five to fifty-year sentence imposed following his criminal conviction for assaulting Nicholas. Moreover, the government interest is negligible: Ensuring that corrections officers behave legally and responsibly might be implicated in this matter, but that government interest is best protected through the administrative process provided to inmates for purposes of alleging official misconduct, a process that has been invoked by Kittrell in a separate proceeding. **See Kittrell v. Watson**, 88 A.3d 1091 (Pa. Cmwlth. 2014).

In any event, this issue, like several others, has been waived on procedural grounds. In light of the challenges they face conforming to procedure with which attorneys are far more familiar, we endeavor to be fair to *pro se* litigants, overlooking minor errors of procedure and other insubstantial missteps. Nonetheless, *pro se* litigants must comply substantially with our rules of procedure. Thus, while we typically construe *pro se* filings liberally, we cannot overlook procedural errors that strike at the substantive considerations protected by Pennsylvania's rules of

procedure. ***See generally Laird v. Bernard***, 528 A.2d 1379 (Pa. Super. 1987). With this in mind, we will now address Kittrell's claims individually.

Kittrell's issue pertaining to the appointment of counsel and two other issues were not raised in his *nunc pro tunc* post-trial motion. Pa.R.C.P. 227.1 governs post-trial motions and states in relevant part:

> (b) Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,
>
> > (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and
> >
> > > *Note*: If no objection is made, error which could have been corrected in pre-trial proceedings or during trial by timely objection may not constitute a ground for post-trial relief.
> > >
> > > Pa.R.E. 103(a) provides that the specific ground for an overruled objection, or the substance of excluded evidence, need not be stated at or prior to trial, or without having made an offer of proof, if the ground of the objection, or the substance of the evidence sought to be introduced, was apparent from the context.
> >
> > (2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

We may grant relief only for issues that Kittrell raised both at trial and in a motion for post-trial relief. ***See Phillips v. Lock***, 86 A.3d 906, 918-19 (Pa. Super. 2014).

- 11 -

Kittrell did not raise issues I (failure to appoint counsel) or VIII (hearing counterclaim without jury trial) in his post-trial motion. Accordingly, they are waived.

Issue X (newly-discovered evidence), too, was omitted from Kittrell's post-trial motion. It is unclear from his conclusory argument when he became aware of the alleged newly-discovered evidence, which allegedly involved sexual assault accusations leveled against Nicholas. Kittrell contends that he was unaware of this information at the time of trial, and alludes to a purported article in an unspecified Centre County newspaper in support of his claim. Yet, Kitrrell's utter lack of specificity leaves it unclear whether this information became available in the lengthy interim between the trial court's entry of its plaintiff's verdict and the trial court's denial of Kittrell's *nunc pro tunc* post-trial motion, which spanned approximately five months, or after Kittrell filed a notice of appeal in this matter, divesting the trial court of jurisdiction to consider newly-discovered evidence. Because Kittrell has not pleaded in clear terms that he discovered the evidence in question during the pendency of this appeal, rather than during the period between the verdict and the trial court's denial of his *nunc pro tunc* post-trial motion, we have no basis to except this issue from the requirement that it be raised first in a post-trial motion in order to preserve it for appellate review. Hence, this issue, like issues I and VIII, is waived.

We also must deem waived several of Kittrell's issues that he preserved below because Kittrell has not adequately developed the

- 12 -

corresponding arguments in his brief. Rule 2119(a) requires that an appellant must provide, in support of each claim, "such discussion and citation of authorities as are deemed pertinent" to the issue in question. When an appellant fails to do so, we will not review the merits of the issue in question. ***See Branch Banking & Trust v. Gesiorski***, 904 A.2d 939, 942-43 (Pa. Super. 2006) ("[W]e decline to become the appellant's counsel. When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a [c]ourt will not consider the merits thereof.").

Kittrell alleges in issue II that the trial court erred when it did not tell Kittrell that he had ten days to file post-sentence motions. Kittrell has cited no authority for this proposition other than Pa.R.C.P. 227.1, which states that one has ten days to file post-sentence motions but does not require the court to explain such rights to defendants. Similarly, in issue III, Kittrell alleges that the trial court erred by denying Kittrell's post-trial motion *nunc pro tunc*. Specifically, he contends that the trial court denied his motion solely upon the basis that Kittrell had failed to provide adequate explanation for not filing a post-trial motion within ten days of the entry of the original verdict.

This court is unaware of any authority that requires trial courts to describe post-trial rights in detail to civil litigants. Moreover, while the trial court **alluded** to the untimeliness and the absence of an explanation for same, it proceeded to address the merits of the allegations of trial court

- 13 -

error contained in Kittrell's *nunc pro tunc* post-trial motion. In short, Kittrell was afforded review of those issues, and we have not deemed any issues waived based upon the untimeliness of Kittrell's original post-trial motion. Thus, issues II and III are moot to the extent that they are not waived.

In issue VI, Kittrell contends that the trial court erred by admitting the allegedly perjured testimony of corrections officer Kaufmann. Although Kittrell cites **Mooney v. Holohan**, 294 U.S. 103 (1935), in which relief was **denied** on procedural grounds for claims related to the alleged perjury of one or more prosecution witnesses, his allegations of perjury in **this** case are unsubstantiated. He refers to his alleged acquittal in the criminal case arising out of this incident at "CP-14-CR-1435-2010," Brief for Kittrell at 12, and implies, but does not clearly state, that the alleged acquittal arose from some sort of perjury. However, our memorandum affirming Kittrell's judgment of sentence indicates that he was, in fact, **convicted** of all charges at that docket. Moreover, he offers no allegations as to the allegedly perjured testimony, nor any direction or exhibits to substantiate same. Finally, it is not at all clear to this Court that Kittrell challenged this testimony at the time it was offered, which would be necessary to preserve the issue for appeal. **See Samuel-Bassett v. Kia Motors Amer., Inc.**, 34 A.3d 1, 45-46 (Pa. 2011); **cf. Commonwealth v. Reaves**, 923 A.2d 1119, 1131 (Pa. 2007) ("Although contemporaneous objections operate to preserve issues for appellate review, they serve an equally important function in **obviating** appeals by affording the trial court a timely

opportunity to correct mistakes and/or to reconsider decisions." (emphasis in original)). Accordingly, we find that this issue, too, is waived due to Kittrell's failure to establish due preservation of the issue and his failure to provide any substantiation of his claims.

Turning towards the issues that Kittrell has briefed properly and adequately, in issue IV Kittrell alleges that the trial court erred by declining to grant relief on Kittrell's sexual assault counterclaim. Kittrell's argument on this point is tantamount to a challenge to the fact-finder's weighing of the evidence. Kittrell's claims V ("Judge's verdict was contrary to the evidence") and VII ("Judge's verdict was so contrary to the weight of the evidence") also reflect challenges to the weight of the evidence.[6] Consequently, we consider them together.

When reviewing a claim regarding the weight of the evidence, this court applies the following standard:

> A new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but, rather, after due consideration of the evidence found credible by the [fact-finder], and viewing the

---

[6] In this variation on his weight of the evidence argument, Kittrell alludes to the above-mentioned allegations against Nicholas of sexual misconduct and also suggests without any substantiation that video evidence of relevance to this case was spoliated. **See** Brief for Kittrell at 13. These conclusory assertions, which occupy one sentence each, are too insubstantial to warrant consideration.

> evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion. Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion.
>
> We stress that if there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm.

*Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 274 (Pa. Super. 2014) (quoting *Winschel v. Jain*, 925 A.2d 782, 788 (Pa. Super. 2007)).

Here, there certainly was enough evidence for the trial court to deny Kittrell's claims. The trial court was presented with conflicting testimony as to whether Nicholas sexually assaulted Kittrell, and chose to credit Nicholas' account over Kittrell's. Kittrell presented no evidence of this alleged assault other than bald allegations in his counterclaims; he asked Nicholas whether he had sexually assaulted Kittrell at trial and Nicholas denied that he had, a denial the trial court was free to find credible. N.T. at 23-24. The trial court was tasked with a similar credibility determination when it determined which party had started the altercation, and, once again, the trial court favored Nicholas' evidence over Kittrell's divergent account. Given Kittrell's limited presentation at trial and the conflicting, more detailed and substantially consistent testimony of Officers Watson and Nicholas, we have little difficulty concluding that the trial court did not abuse its discretion in holding that the verdict was not against the weight of the evidence.

In issue IX, Kittrell alleges that the trial court abused its discretion when it allowed him to proceed to trial without first ordering a psychological/psychiatric evaluation of Kittrell's competence. By order entered on July 24, 2012, the trial court directed Kittrell to "provide the [c]ourt with an assessment from [Kittrell's] treating psychologist or psychiatrist regarding [Kittrell's] ability to proceed to trial." In September 2013, Kittrell evidently inquired of his Department of Corrections psychologist, Richard Goss, whether he would be able to evaluate Kittrell's competency. The psychologist demurred, indicating that, "[a]s a DOC employee this evaluation is beyond my job duties and would constitute a conflict of interest." Inmate's Request to Staff Member, 9/17/2013.

First, it is not clear that this document ever was made part of the certified record – Kittrell appends it as an exhibit to his brief before this Court. If it is not contained in the certified record, we may not consider it. *See Commonwealth v. Preston*, 904 A.2d 1, 6-7 (Pa. Super. 2006). Just as importantly, this request plainly was filed months after Kittrell's trial and well over a year after the trial court directed the preparation of an assessment. Thus, it provides no support for the proposition that Kittrell was improperly denied anything during the only time period that matters, the months and years leading up to the trial in question. Our review of the certified record indicates that Kittrell took no formal action regarding his evaluation between July 24, 2012 and his trial to seek the evaluation that

the trial court not only allowed but indeed directed Kittrell to furnish. Accordingly, Kittrell waived any claim based upon this issue.

Finally, in issue XI, Kittrell contends that the trial court erred by allowing Nicholas' counsel to appear without first filing a praecipe of appearance. This claim is unavailing. Pennsylvania Rule of Civil Procedure 1012 provides as follows:

> A party may enter a written appearance which shall state an address at which pleadings and other legal papers may be served in the manner provided by Rule 440(a)(1) and a telephone number. The appearance may also include a telephone facsimile number as provided in Rule 440(d). Such appearance shall not constitute a waiver of the right to raise any defense including questions of jurisdiction or venue. Written notice of entry of an appearance shall be given forthwith to all parties.
>
> *Note*: **Entry of a written appearance is not mandatory**.

Pa.R.C.P. 1012(a) (emphasis added). Under Rule 1012, Nicholas' attorney was not required to enter a written appearance. Furthermore, Kittrell's argument is entirely conclusory, and therefore subject to waiver for failure to conform to Pa.R.A.P. 2119(a).

Judgment affirmed. Petition for Relief denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2014

- 18 -